**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jose M.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary of Homeland Security*; David Venturella, *Acting Director of U.S. Immigration & Customs Enforcement*; David Easterwood, *Field Office Director for Enforcement and Removal Operations*; and Joel Brott, *Sherburne County Sheriff*,

Respondents.

File No. 26-CV-3927 (JMB/JFD)

**ORDER**

---

Alexander Riley Lindenfelser, Minneapolis, MN, for Petitioner Jose M.

David W. Fuller, United States Attorney's Office, Minneapolis, MN; and Worthington Phillips, United States Attorney's Office, Minneapolis, MN for Respondents Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, and Joel Brott.

---

This matter is before the Court on Petitioner Jose M.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, and Joel Brott (together, the Respondents) (Pet.) For the reasons explained below, the Court grants the Petition.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

## FINDINGS OF FACT

1. Jose M. is a 38-year-old native and citizen of Mexico. (Pet. ¶ 1; Doc. No. 7-1 at 1.)

2. On or around January 1, 1994, Jose M. first entered the United States without inspection at the age of two or three years old. (Pet. ¶ 27.) Since that time, Jose M. grew up, and he has lived in the United States for 36 years alongside his mother. (*Id.*)

3. On December 17, 2002, Jose M. was admitted to the United States on a V-3 nonimmigrant visa. (*Id.* ¶ 15.)

4. Jose M. is applying for Lawful Permanent Residency and does not have a final order of removal. (*Id.* ¶ 26.)

5. At some unknown time on or around May 2, 2026, ICS agents learned that Jose M. was in state custody in Washington County Jail, and they issued an immigration detainer, preventing Washington County from releasing him. (Doc. No. 7-1.)

6. Also on May 2, 2026, ICE officials issued a Form I-200 administrative warrant of arrest. (Doc. No. 7-2.) The Form I-200 was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-2.) Thus, Respondents detained Jose M. pursuant to their authority under 8 U.S.C. § 1226.

7. On May 5, 2026, ICE officials issued a Form I-832 Notice to Appear (NTA), which charged him as being a non-citizen "present in the United States who has not been admitted or paroled." (Doc. No. 7-3).

8. On September 4, 2026, Jose M. filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet.)

9. On September 8, 2026, the Court ordered Respondents, among other things, to respond to the Petition on or before 11:00 a.m. on September 10, 2026. (Doc. No. 4.)

10. After Respondents timely filed their response (Doc. No. 6), the Court granted Jose M.'s request to reply (Doc. No. 8), which he did on September 13, 2026 (Doc. No. 9).

## DISCUSSION

In his Petition, Jose M. seeks immediate release, arguing that his detention violates the requirements of the INA and accompanying regulations, as well as the Fourth and Fifth Amendments of the Constitution. For their part, the Respondents argue that the detention of Jose M. is mandatory pursuant to 8 U.S.C. § 1225(b)(2).[2] For the reasons set forth below, the Court grants the Petition.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through

[2] Respondents do not argue that the provisions of 8 U.S.C. § 1226(c) apply in this case.

a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Inapplicability of 8 U.S.C. § 1225**

It is an undisputed matter of fact that Respondents detained Jose M. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-2 at 1.) In response to the Petition, however, Respondents advance a different basis for the detention of Jose M.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention non-citizens, without any individualized determination and regardless of whether the non-citizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry). *But see Rodriguez Vazquez v. Bostock*, __F.4th__, __, No. 25-6842, 2026 WL 2196424, at *9, 16 (9th Cir. July 30, 2026) (rejecting Respondents' "newfound interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problem," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits).

This Court concludes that Respondents cannot now change the basis for the detention of Jose M. He was detained under section 1226 alone, and Respondents advance

no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions.[3] Thus, just as it is stated in the Form I-200 on which the detention was based, the Court concludes that the Respondents detained Jose M. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

**C. Invalidity of Warrant**

Having determined that the Respondents have detained Jose M. pursuant to section 1226, the Court considers whether Jose M. was brought into custody pursuant to a valid warrant or pursuant to an authorized warrantless arrest. For the reasons discussed below, the Court concludes he was not.

[3] The NTA seems to include a false statement. It states that Jose M. was "not then admitted or paroled" after entering the United States around August 1992. However, there is no dispute that Jose M. was admitted into the United States, on a V-3 Visa, many years after entering the country. Respondents' brief states: "On December 17, 2002, Petitioner was admitted on a V-3 Visa. (Doc. No. 6 at 2; *see also* Doc. No. 7-5 at 1 (stating that Jose M.'s "status was changed to that of V-3 Unmarried Children (under 21) of a U.S. Lawful Permanent Resident on December 17, 2002").) This is significant because *Avila* does not extend to non-citizens who entered without inspection and then were subsequently admitted through issuance of a valid visa. *Avila*, 170 F.4th at 1133 ("Here, Avila does not contest that he has not been lawfully admitted into the country. . .") Moreover, Respondents do not argue that the subsequent expiration of the visa impacts their argument under section 1225.

Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). A Form I-200 is an administrative warrant which authorizes detention of a non-citizen's if it is issued "*[a]t the time of issuance* of the [NTA], *or at any time thereafter* and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b) (emphasis added). Putting both rules together, DHS may detain a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). This is because an NTA is a "'case-initiating pleading . . . like an indictment in a criminal case . . . that serves as the basis for commencing a grave legal proceeding.'" *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 6 (D. Minn. May 26, 2026), Doc. No. 9 (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021)). Therefore, a warrant issued before removal proceedings have begun would improperly purport to exercise authority that does not yet exist. *Id.*

In this case, Respondents did not follow this required sequence. The record presented establishes that while the Form I-200 was issued on May 2, 2026, the NTA was not issued until May 5, 2026. (Pet. ¶¶ 57, 59; Doc. No. 7-2 at 1; Doc. No. 7-3 at 1.) Thus, the Court concludes that the Form I-200 was invalid and cannot support a lawful detention.

Because Jose M.'s detention was pursuant to an invalid warrant, and therefore unlawful, immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical

remedy for such detention is, of course, release."); *see also Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28, (S.D. Iowa 2026) (concluding ICE had no authority to arrest petitioner relying on Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where Form I-200 "was not issued until after [petitioner's] arrest and initial detention"); *see also, e.g.*, *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking following arrest in the field); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" for arrest effected in absence of valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (concluding DHS's detention of petitioner under section 1226(a) was unlawful because DHS arrested petitioner pursuant to Form I-200 that was invalid by virtue of being issued prior to issuance of NTA); *Marinero v. Bondi*, No. 26-CV-1007 (JMG), 2026 WL 357653, at *1 (D. Minn. Feb. 9, 2026) ("[I]ssuing an administrative warrant after an arrest . . . isn't good enough to trigger § 1226(a).").

To the extent that the Respondents alternatively seek to justify Jose M.'s detention under the warrantless arrest provisions of 8 U.S.C. § 1357(a), the Court cannot agree because the record presented cannot support the necessary finding of probable cause. Section 1357 permits an immigration officer to "arrest any [non-citizen] in the United States" without a warrant "if he has reason to believe that [1] the [non-citizen] . . . is in the United States in violation of any such law or regulation and [2] is likely to escape before a

warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). The Eighth Circuit has interpreted the term "reason to believe" in section 1357(a)(2) to "mean[] constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Here, the record presented contains no evidence to satisfy the second prong. The Respondents appear to argue that any noncitizen who is in the United States after the expiration date of a visa is "likely to escape." (Doc. No. 6 at 21–23.) However, the Respondents do not provide any legal support for the proposition that expiration equates to evasion or escape and which, if true, would likely violate constitutional due process and would effectively render the second statutory requirement meaningless. *E.g.*, *Quintana*, 623 F.3d at 1239. In addition, the facts here are distinguishable from *Quintana*, where officers had reason to believe the non-citizen was likely to escape because they were unable to verify his identity, were unable to validate his claims of legal entry into the United States, and suspected him of committing a criminal drug-trafficking offense at the time of his arrest. *Id.* at 1240–41. Here, the record shows that Jose M. was forthcoming and honest with ICE agents and contains no facts to support a characterization of his conduct as evasive, much less as an attempt to escape immigration authorities at any point. Further, it is clear that the ICE officers who detained Jose M. did not believe they were undertaking a warrantless arrest and there is no evidence presented that any of these officers made observations to support a belief that Jose M. was likely to escape. Absent such evidence, the Court concludes that there was not probable cause to believe he presented any risk of

escape. Thus, Jose M.'s detention was unlawful and he is entitled to release.[4]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Jose M. immediately, without conditions, and in any event no later than 4:00 p.m. CT on September 15, 2026.

2. On or before 11:00 a.m. CT on September 16, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Jose M.

3. On or before 11:00 a.m. CT on September 16, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

[4] Although the Court need not address the question of whether Jose M.'s detention violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Jose M.'s favor. Jose M. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available and inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Jose M.'s ongoing detention is also unlawful for this reason. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

4. Petitioner Jose M. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Jose M. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 14, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court